UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TINA B.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:20cv460 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019 (B8D).

2

2. The claimant did not engage in substantial gainful activity (SGA) during the period from her alleged onset date of January 1, 1986 through her date last insured of December 31, 2019 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: obesity; calcaneal spurs of the bilateral feet and mild degenerative changes at the talonavicular joint of the left foot; left knee mild degenerative joint disease; mild right Achilles insertional tendinosis/secondary rupture; right knee osteoarthritis; generalized anxiety disorder; depression; status post excision of Haglund's deformity; status post right knee arthroscopy with medial meniscectomy and left knee arthroscopy meniscal repair; status post right gastrocnemius recession; and mild lumbar and thoracic degenerative disc disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; needed to avoid concentrated exposure to extreme heat and cold, humidity, fumes, odors, dust, gases, and poor ventilation; needed to avoid unprotected heights, dangerous moving machinery, and operation of motorized vehicles; could perform work requiring simple instructions and routine, repetitive tasks; could not perform work requiring a specific production rate, such as assembly-line work; could respond appropriately to predictable, routine changes in the workplace; could make only simple work-related decisions; and could maintain attention and concentration for two-hour segments.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 30, 1971 and was 48 years old, which is defined as a younger individual age 18-44, on the date last insured. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 1986, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on December 20, 2021. On February 28, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on March 16, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not

>  disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ erroneously overemphasized daily activities.  The ALJ stated:

> The claimant made the following allegations regarding the intensity, persistence, and limiting effects of her symptoms. She alleged disability due to depression, bulging discs, and problems with feet and knees (B2E). She testified that she cannot sit or stand long. Her legs fall asleep. She needs a chair to cook and do dishes and laundry. She needs her husband to get clothes out of the washer. She tries to straighten the living room. She uses a stool in the shower. She has trouble bending over. She needs to sit down to get dressed. She has two discs in her lower back causing sciatica. She takes Ibuprofen and rests. Physical therapy did not help. Her depression makes her not want to do anything. She does not have any friends. When she goes grocery shopping, the cashiers will get things for her and bring them out to the car. Her husband will get the groceries out of car. If she has to do it herself, it is very tiresome. It is exhausting doing dishes. Her legs swell from just sitting. She needs to elevate them for an hour two to three times a day.
>
> *  *  *
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because she reported that she had not seen any mental health providers previously. She also noted that she did not have any issues interacting with other people (B4E). She testified that she drives, goes grocery shopping, and does all the cooking for her family. During the medical consultative exam, the examiner noted that she was not having residual pain or issues with her feet bilaterally. On exam, she did not use an assistive device. She could walk on heels. She could tandem walk and squat. She could get on and off the exam table. Straight leg raise was negative bilaterally. Muscle strength was 5/5 throughout. Grip strength was 5/5 bilaterally. She had normal muscle strength and tone. Reflexes were normal. Sensation was intact throughout. Range of motion was normal except in her knees and hips. Left knee [x-]rays showed only mild degenerative joint disease without traumatic findings (B5F).

(Tr. 21, 22-23).

Plaintiff argues that the ALJ glossed over some of the problems Plaintiff encounters in doing her daily activities. For instance, although Plaintiff can drive, she has to continuously look around to keep from having a spacing episode. When Plaintiff shops, she has to have assistance from someone to place items in her cart, and also assistance to put the groceries in the car and then assistance to take them out when she gets home. Further, at home, Plaintiff has a special bariatric chair on wheels that accommodates her weight (315 pounds), and her round shape. She scoots around in her chair from place to place at home in an attempt to cook and help with laundry. She rolls around in the chair because standing makes the nerves in her legs and back inflamed.

The Seventh Circuit has repeatedly cautioned that a person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir.2011); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005). An ALJ cannot disregard a claimant's limitations in performing household activities. *Moss v. Astrue*, 555 F.3d 556 (2009); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir.2006). In the present case, it is clear that Plaintiff has significant limitations in her ability to do daily activities such that they are not indicative at all of any ability to do full-time work. Thus, the ALJ erred on this issue and remand is warranted.

Next, Plaintiff argues that the ALJ erred in failing to incorporate certain items into the RFC. Plaintiff asserts that she requires a bariatric chair and slip-on footwear. Plaintiff further contends that the RFC should include upper extremity limitations, and lower extremity elevation.

6

With respect to the bariatric chair (and slip-on footwear), the Commissioner notes that Plaintiff has not provided any evidence to show that the items were medically necessary. Moreover, Plaintiff was able to walk adequately at various examinations and did not need an assistive device. (Tr. 22, 478, 454). Thus, as there is no evidence that Plaintiff is confined to a wheelchair or that a restriction to mostly seated, sedentary work would not sufficiently accommodate her seating needs (or footwear needs), there is no basis for remand on this issue.

With respect to upper extremity limitations, the ALJ considered mild osteoarthritis of Plaintiff's left elbow and shoulder, but she found that these impairments were not severe. (Tr. 18). The ALJ explained that x-rays showed only mild osteoarthritis (Tr. 18, 1491, 1500) and that there was no evidence that it "cause[d] more than a minimal limitation of physical . . . ability to do basic work activities". (Tr. 18). Plaintiff points to decreased range of motion, tenderness, treatment with a steroid injection, and difficulties with doing laundry to show that additional limitations are warranted. However, the ALJ also observed that Plaintiff demonstrated full grip strength and full muscle strength at her consultative examination. (Tr. 22, 23, 24, 454-55). The ALJ reasonably accounted for Plaintiff's impairments by restricting her lifting and carrying to "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools". (Tr. 20). 20 C.F.R. § 404.1567(a). Plaintiff has not demonstrated why the RFC warrants additional limitations on reaching and handling beyond those contemplated for sedentary work, which presupposes that any such reaching or handling would be minimal. Thus, there is no basis for remand on this issue.

Plaintiff asserts that she could not sit for six hours in a workday due to her alleged need to elevate her legs occasionally, to prevent swelling, and to reduce lower back pain. But again,

7

Plaintiff provides no evidence to show that such limitations are medically necessary. *Weaver v. Berryhill*, 746 F. App'x. at 579. The ALJ noted these alleged symptoms but found that "these symptoms are not entirely consistent with the medical evidence and other evidence in the record". (Tr. 21). As the ALJ observed, both the State agency medical consultant and the medical consultative examiner found no significant limitations in Plaintiff's ability to sit. (Tr. 23-24). The ALJ reasonably relied on both the medical record and the opinion evidence in finding that Plaintiff could perform at most a restricted range of sedentary work. (Tr. 20-21).

Plaintiff also asserts that the ALJ improperly discredited her mental health impairments, specifically her encephalomalacia of left frontal lobe. Plaintiff lists a set of generic symptoms common to people with encephalomalacia and then asserts that she "has some of these". Plaintiff then contends that the ALJ cherry-picked the evidence and ignored that Dan Boen, PhD, an agency psychological examiner, found, *inter alia*, that Plaintiff's thought form contained auditory and visual hallucinations, her level of insight was significantly below normal, and she has a major neurocognitive disorder due to traumatic brain injury. After reviewing the record, this Court agrees that the ALJ failed to give due consideration to all of the evidence related to Plaintiff's brain/mental health impairments. Thus remand is proper on this issue.

Plaintiff also claims that the ALJ's step 5 finding is not supported by substantial evidence because the VE testified that there were 34,800 jobs in the national economy that someone with Plaintiff's limitations could perform. Plaintiff asserts that 34,800 is not a significant number of jobs. "The Commissioner bears the burden of showing that there are a significant number of jobs that the claimant is capable of performing." *Liskowitz v. Astrue*, 559 F.3d 736, 743-44 (7th Cir. 2009); *see* 20 C.F.R. § 404.1560(c)(2). The Seventh Circuit has upheld findings that jobs existing

in approximately the same or in far fewer numbers were significant, and thus sufficient to meet the Commissioner's burden of proving the availability of employment that a disability claimant is capable of performing. *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018); *Lawrence v. Astrue*, 337 F. App'x 579, 583 (7th Cir. 2009); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993). Thus, there is no basis for remand on this issue.

Relatedly, Plaintiff argues that the vocational expert lacked a proper foundation for his testimony that there were 34,800 jobs that Plaintiff could perform. ALJs use vocational expert testimony to determine whether there are a "significant number" of jobs that a claimant can perform, not to determine the precise number of jobs. 20 C.F.R §§ 404.1520(c), 404.1566(a). The vocational expert testified that the estimate he gave was based on SkillTRAN. (Tr. 65). Plaintiff's representative asked the vocational expert about the relationship between SkillTRAN data and DOT job numbers. (Tr. 65). The vocational expert responded, "SkillTRAN uses data from the Bureau of Labor Statistics as well as other job research information to come up with estimates of jobs in various – well according to the DOT numbers for different types of industries". (Tr. 65-66). The vocational expert then explained that while "there [are] no surveys specifically by the Bureau of Labor Statistics for jobs by the DOT number. There never has been and so what SkillTRAN has done through their research is try to come up with an estimate of the number of jobs that exist by DOT number, again in various industries where those jobs are found". (Tr. 66). Further, the vocational expert said, that research was peer reviewed. (Tr. 66). Finally, in response to questioning from Plaintiff's representative, the vocational expert said that he had designed and conducted statistical studies on jobs. (Tr. 66-67). This Court agrees with the

9

Commissioner that the vocational expert provided a reliable estimate based on widely used and reputable resources, as well as his own professional experience, and thus it was not error for the ALJ to rely on the vocational expert's testimony.  There is no basis for remand on this issue.

However, as discussed above, the Court remands this case on the issues of proper evaluation of Plaintiff's daily activities and proper consideration of her brain impairments.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 21, 2022.

s/ William C.  Lee  
William C. Lee, Judge  
United States District Court
